IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID PICARIELLO AND MELISSA PICARIELLO, H/W, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| SAFWAY SERVICES, LLC, | : | NO.  11-5130 |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                    August 27, 2012

Currently pending before the Court are: (1) Defendant Safway Services, LLC's

("Defendant") Motion to Preclude Expert Testimony; and (2) Defendant's Motion for Summary

Judgment.  For the following reasons, the Motions are denied.

I.       **FACTUAL AND PROCEDURAL HISTORY**

On July 27, 2010, Plaintiff David Picariello was working as a welder at the Aker

Philadelphia Shipyard ("Aker").  (Def.'s Mot. Summ. J., Ex. C, Dep. of David Picariello

("Picariello Dep.") 57:10-60:6, Dec. 5, 2011.)  That morning, Mr. Picariello had two assignments

in the cargo hull of a ship.  (Id. at 59:7-14, 76:5-9.)  For the first job, he worked on the second

level of a scaffolding deck.  (Id. at 92:20-93:17.)  The scaffolding at issue was owned and

supplied by Aker, and was erected by Defendant.  (Id. at 77:13-16; Def.'s Mot. Summ. J., Ex. F,

Aff. of Edward Rafferty ¶ 5, May 10, 2012.)  After completing the first assignment, Mr.

Picariello was required to walk across the scaffold planking and climb up to an intermediate

location between the level he was on and the next main level of the scaffolding.  (Picariello Dep. 104:19-106:9.)  To do so, he used a vertical metal ladder.  (Id. at 106:10-16.)  When he reached the top rail, he slipped and fell.  (Id. at 132:15-133:20.)  When he landed, Mr. Picariello rolled his left ankle, sat down, and lost consciousness for an unspecified amount of time.  (Id. at 133:13-135:2.)

On July 18, 2011, Mr. Picariello and his wife, Melissa Picariello, (collectively "Plaintiffs") filed suit against Defendant in the Court of Common Pleas for Philadelphia County. The Complaint sets forth two counts: (1) Mr. Picariello's negligence claim; and (2) Mrs. Picariello's loss of consortium claim.  On August 11, 2011, Defendant successfully removed the case to this Court.  It filed the present Motion to Preclude Expert Testimony and Motion for Summary Judgment on May 29, 2012.  Plaintiffs filed their Responses in Opposition to the Motion for Summary Judgment on June 13, 2012 and to the Motion to Preclude Expert Testimony on June 20, 2012.

## II.     MOTION TO PRECLUDE EXPERT TESTIMONY

### A.     Standard of Review

The Supreme Court has explained that district court judges perform a "gatekeeping role" with respect to expert testimony by assessing whether such testimony is admissible under Federal Rule of Evidence 702.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 590-91, 597 (1993); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 146-47 (1999) (extending Daubert to testimony about "technical or other specialized knowledge") (internal quotations and citations omitted).  Rule 702 provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience,

training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier
of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  When the expert testimony at issue is not scientific, "the court must

determine whether the expert is qualified to provide such an opinion, whether the testimony

assists the fact-finder, whether the testimony is reliable and whether the testimony 'fits' the facts

of the case."  D & D Assoc., Inc. v. Bd. of Educ. of N. Plainfield, 411 F. Supp. 2d 483, 487-88

(D.N.J. 2006), aff'd, 2006 WL 755984 (D.N.J. Mar. 20, 2006).

The first requirement of qualification is interpreted liberally to encompass "a broad range

of knowledge, skills, and training."  In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir.

1994).  At minimum, the expert "must possess skill or knowledge greater than the average

layman."  Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000) (quotations omitted).  The

second factor of reliability "means that the expert's opinion must be based on the 'methods and

procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert

must have 'good grounds' for his or her belief."  In re Paoli, 35 F.3d at 742 (quoting Daubert,

509 U.S. at 589-90).  Finally, the requirement of "fit" concerns relevancy.  "'Expert testimony

which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'"  In re

Unisys Savings Plan Litig., 173 F.3d 145, 162 (3d Cir. 1999) (quoting Daubert, 509 U.S. at 591).

**B.      Discussion**

Plaintiffs' expert is Matthew J. Burkart, P.E., the president of Aegis Corp. Engineering

Consultants.  (Def.'s Mot. Preclude Expert Test., Ex. A, Technical Report of Aegis Corp.

Engineering Consultants, Apr. 2, 2012 ("Technical Report") 6.)  He is a Graduate Civil-

Structural Engineer, a Registered Structural Engineer, a Registered Land Surveyor, and has a

Master's Degree in Safety Science.  (Id. at 7.)  In moving to preclude Mr. Burkart's expert

testimony, Defendant makes four arguments: (1) the opinions of Mr. Burkart are not admissible;

(2) the opinions of Mr. Burkart are not relevant; (3) the opinions of Mr. Burkart are not reliable;

and (4) the methodology used by Mr. Burkart is not reliable.  The Court considers each argument

separately.

### 1.       Admissibility of Mr. Burkart's Opinions

Defendant asserts that the opinions of Mr. Burkart fail to meet the legal standards of

admissibility.  (Def.'s Mem. Supp. Mot. Preclude Expert Test. ("Def.'s Mem. Mot. Preclude")

5.)  While Defendant provides the Court with ample citations to case law from the United States

Supreme Court and the Third Circuit Court of Appeals pertaining to admissibility, it does not

apply this law to the facts of the current matter.  (See id. at 5-8.)  Of course, it is possible that this

portion of Defendant's brief was merely intended to be a "standard of review" section.  In any

event, in the absence of any argument for the Court to analyze, it denies Defendant's Motion to

Preclude to the extent it is based on the broad issue of admissibility.

### 2.       Relevance of Mr. Burkart's Opinions

Pursuant to Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible."  Fed.

R. Evid. 402.  Here, Defendant argues that Mr. Burkart's expert testimony is not relevant to the

current matter, that it lacks any factual foundation, and "that there is a yawning gap between Mr.

Burkart's beliefs, impressions, assumptions and opinions and the actual facts of record."  (Def.'s

Mem. Mot. Preclude 8.)

4

The essence of Mr. Burkart's opinion is that Defendant failed to have an adequately trained person supervise the erection of the scaffolding and did not comply with the scaffold manufacturer's recommendations regarding adequate or proper access.  (Technical Report 6.) This evidence goes directly to the issue of whether Defendant breached a duty owed to Mr. Picariello and is therefore liable for the injuries he suffered.  As such, it is unquestionably relevant to the case at bar.  While Defendant's references to a "yawning gap" between Mr. Burkart's opinions and the factual record may bear on whether the expert testimony is reliable—an issue which is discussed below—it does not demonstrate that it is irrelevant.[1]

### 3.      Reliability of Mr. Burkart's Opinions

Defendant contends that Mr. Burkart's opinion is not reliable because there is no "fit" between his testimony and the record.  (Def.'s Mem. Mot. Preclude 10.)  Defendant notes that Mr. Burkart admitted that the Occupational Safety and Health Administration ("OSHA") does not expressly mandate the installation of a swing gate or hatch,[2] that Defendant did not violate

---

[1]  Defendant also suggests that Mr. Burkart's testimony should be precluded pursuant to Federal Rule of Evidence 403, which provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Defendant does not explain how Mr. Burkart's testimony meets any of these criteria, other than to say that it is not reliable.  (Def.'s Mem. Mot. Preclude 8.)  The issue of reliability is addressed in the following section of this Memorandum.

[2]  As is discussed in more detail in the section of this Memorandum addressing the Motion for Summary Judgment, Mr. Picariello's negligence claim is largely premised on the idea that Defendant should have incorporated a swing gate or hatch into the scaffolding used in the hull of the ship, and that the absence of either of these devices was the proximate cause of his fall.  Though neither party has provided a precise description of how a swing gate or hatch operates, it appears that they offer an alternative means of accessing scaffolding platforms, eliminating the need to climb over guardrails.  (Pls.' Resp. Opp'n Mot. Summ. J. 3.)

any standards set forth by its own industry or by the American National Standards Institute

("ANSI"), and that the scaffolding did not violate any local ordinances.  (Id. at 9-10.)  It argues

that the scaffolding at issue was owned by Aker—which never requested a swing gate or

hatch—and that Mr. Burkart himself acknowledged that the inclusion of a gate or hatch would

have required Aker, not Defendant, to make modifications to the hull of the ship.  (Id. at 9.)

While Defendant has identified potential weaknesses in Mr. Burkart's testimony that may

ultimately help convince a jury to rule in its favor, these criticisms do not necessarily

demonstrate that the expert opinion is unreliable.  As Plaintiffs note in their Response in

Opposition, the reliability requirement does not mean that a party seeking to introduce expert

testimony must prove by a preponderance of the evidence that the expert's assessments are

correct.  (See Pls.' Resp. Opp'n Mot. Preclude 4 (quoting In re Paoli, 35 F.3d at 744).)  After

reviewing Mr. Burkart's Technical Report and his deposition transcript, the Court finds that his

opinion is reliable for purposes of the Federal Rules of Evidence.  In preparing his report, Mr.

Burkart examined the Complaint, Defendant's answers to interrogatories and responses to

requests for production of documents, drawings of the scaffolding at issue, multiple deposition

transcripts from key witnesses in this litigation, and a catalogue from a company called Layher,

the alleged manufacturer of the scaffolding.  (Technical Report 1-2, 5.)  Mr. Burkart found that

the Layher catalogue made safety gates available for purchase, that Defendant failed to have an

adequately trained person supervise the erection of the scaffolding and did not comply with

Layher's safety guidelines, and that these failures created an unsafe condition which caused Mr.

Picariello's injury.  (Id. at 5-6.)

Mr. Burkart's report provides clearly articulated reasons for all of these conclusions.  In

finding that the erection of the scaffold was not adequately supervised, he cited to multiple

excerpts from the deposition of Christopher Szewczak, Defendant's general foreman, who

oversaw the project.  When asked how he learned how to erect and inspect Layher scaffolding,

Mr. Szewczak responded that he received on-the-job as opposed to formal training.  (Id. at 4.)

According to Mr. Burkart, such training was insufficient to provide Mr. Szewczak with the

knowledge necessary to administer proper supervision.  (Id. at 5.)  Next, in addressing

Defendant's obligation to follow the manufacturer's safety recommendations, Mr. Burkart relies

on 29 C.F.R. 1915.71(h)(1), which states as follows:

> Scaffolds of a type for which specifications are not contained in this section shall
> meet the general requirements of paragraphs (b), (i), and (j) of this section, shall be
> in accordance with recognized principles of design and shall be constructed in
> accordance with accepted standards covering such equipment.

29 C.F.R. § 1915.71(h)(1).  Mr. Burkart avers that "[t]his regulation would require erection in

accordance with manufacturer's recommendations."  (Technical Report 5.)   He reiterated this

point at his deposition:

> Q.      What does accepted standards in this context mean?
> A.      I think first and foremost it would be the manufacturer's recommendations.
>         It would be industry standards.  It would be custom and practice in the
>         industry.

(Def.'s Mot. Preclude Expert Test., Ex. B, Dep. of Matthew J. Burkart, P.E. ("Burkart Dep.")

38:2-7, May 4, 2012.)  In short, the Court finds that Mr. Burkart has demonstrated that his

opinion is based on more than unsupported speculation.  Through his multiple references to the

evidentiary record in this case, his research into materials issued by the scaffolding manufacturer,

and his citation to the Code of Federal Regulations, Mr. Burkart has established "good grounds"

for his expert opinion.

### 4.      The Reliability of Mr. Burkart's Methodology

Defendant contends that Mr. Burkart's opinions are not based on any sound methodology. (Def.'s Mem. Mot. Preclude 10-12.)  It asserts that Mr. Burkart did not perform any tests, reconstructions, or simulations; examine the Layher scaffolding components or the shipyard; or meet with Mr. Picariello.  (Id. at 10.)  Defendant further argues that Mr. Burkart did not adequately explain why Mr. Picariello fell or how the presence of a swing gate would have prevented the accident.  (Id. at 10-11.)

The Court finds that Defendant's argument misconstrues the nature of the expert opinion being submitted.  The majority of Mr. Burkart's testimony does not pertain to any processes or occurrences that require scientific testing to establish their reliability.[3]  Rather, as someone with comprehensive knowledge about the technical aspects of scaffolding, he is being called upon to provide a basis for Plaintiffs' argument that a swing gate could have been installed and that Defendant should have recognized its necessity.  In a case such as this, where the testimony is "nonscientific" in nature, "the emphasis is placed not on the methodology of the expert testimony, but on the professional and personal experience of the witness. . . .  The methodology of proffered nonscientific testimony need not be subjected to rigorous testing for scientific foundation or peer review."  Crowley v. Chait, 322 F. Supp. 2d 530, 539 (D.N.J. 2004) (citations

---

[3]  In this sense, the present case is distinguishable from Oddi v. Ford Motor Co., 234 F.3d 136 (3d Cir. 2000), which is cited by Defendant.  Oddi involved an expert who testified about how a truck could have been redesigned to mitigate the effects of a collision with a guardrail.  Id. at 156.  The Third Circuit upheld the district court's exclusion of this testimony, noting that the expert failed to calculate the force that was generated upon impact, measure the strength of the guardrail, or determine how much force was required to bend the bumper of the truck.  Id. at 158.  The opinions of Mr. Burkart do not relate to matters that require such rigorous scientific testing.

omitted).  The Supreme Court has also recognized "that an expert might draw a conclusion from

a set of observations based on extensive and specialized experience."  Kumho Tire, 526 U.S. at

156.  Defendant has not challenged the credentials or the experience of Mr. Burkart and, as

discussed above, the Court finds that his opinions are based on legitimate sources, such as the

factual record of this case.

Furthermore, when portions of his testimony required an explanation of methodology,

Mr. Burkart was able to provide one.  One such example occurred when Mr. Burkart was asked

to describe the technical aspects of installing a gate or hatch on the scaffolding at issue in this

case:

> Q.    Is it your opinion that either a gate or a hatch should have been used on this
>       particular scaffolding?
> A.    I think those are two alternatives, yes.
> Q.    Are you of the opinion that both could have been used on this particular
>       scaffolding?
> A.    I think both could have been used if the scaffolding was properly constructed.
> Q.    And what would have had to have been done to properly construct it?
> A.    I think as indicated, you needed a support for the other side of the gate, which
>       would probably necessitate adding some clips to provide additional vertical
>       supports there.  The trap door would have required spacing of the uprights
>       suitable for that assembly to fit into the scaffold.  If they were using a metal
>       plank, it would be set up that way.

(Burkart Dep. 41:5-22.)  Here, Mr. Burkart explains with sufficient specificity how the

scaffolding could have been designed to include a swing gate or trap door.  With respect to the

manner in which the scaffold caused Mr. Picariello's fall, Mr. Burkart testified that "you have a

situation where you have to climb over a 42-inch high guardrail.  You're making steps down in

the neighborhood of 21 inches from the top rail to the intermediate rail, a very difficult

maneuver; and somewhere during that [Mr. Picariello] fell and suffered an injury."  (Id. at 55:17-

56:1.)  This statement demonstrates that, in the opinion of Mr. Burkart, the height of the guardrail

created an unsafe condition, and Mr. Picariello's fall was caused by having to climb over the rail.

Again, the Court makes no finding as to whether Mr. Burkart's explanations are persuasive.  It

merely finds that, for the purposes of deciding Defendant's Motion to Preclude, Mr. Burkart has

supported his conclusions with sufficient facts, data, and methodologies.  Accordingly, the

Motion to Preclude Expert Testimony is denied.

**III.     MOTION FOR SUMMARY JUDGMENT**

     **A.     Standard of Review**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-

finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and

decide which is more probative, or to make credibility determinations.  Boyle v. Cnty. of

Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v.

Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must

consider the evidence, and all reasonable inferences which may be drawn from it, in the light

most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587-88 (1986) (citing U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v.

Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence

presented by both sides, the court must accept as true the allegations of the non-moving party,

and "all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine

issue of material fact, it need not "support its motion with affidavits or other similar materials

negating the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet

its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving

party's case."  Id. at 325.  Once the movant has carried its initial burden, the opposing party

"must do more than simply show that there is some metaphysical doubt as to material facts."

Matsushita Elec., 475 U.S. at 586.  "[T]here is no issue for trial unless there is sufficient

evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson,

477 U.S. at 249.  Summary judgment may be granted when "the evidence is merely colorable . . .

or is not significantly probative."  Id. at 249-50 (citations omitted).

## B.       Discussion

In Pennsylvania, a plaintiff who brings a negligence claim must establish that the

defendant owed the plaintiff a duty, that the duty was breached, that the breach caused the

plaintiff's injury, and that the plaintiff suffered damages.  Harris v. Merchant, No.

Civ.A.09-1662, 2010 WL 3734107, at *7 (E.D. Pa. Sept. 23, 2010) (citing Merlini ex rel. Merlini

v. Gallitzin Water Auth., 980 A.2d 502, 506 (Pa. 2009)).

In their Complaint, Plaintiffs allege that Defendant acted negligently by failing to: ensure

that all platforms and walkways were clearly marked and free of hazards; provide a safe means of

ingress and egress on the scaffolding; and comply with standards set forth by OSHA.  (Compl. ¶

12.)  Based upon the briefings currently before the Court, however, it appears that, at this stage of

the litigation, the basis for the negligence claim is more narrowly focused.  Specifically, Plaintiffs

contend that Defendant knew or should have known that an alternative design—namely, the

inclusion of a swing gate or hatch—should have been incorporated into the scaffolding, and that

this would have prevented Mr. Picariello's fall.  (Pls.' Resp. Opp'n Mot. Summ. J. 2-4, 7.)

Defendant moves for summary judgment on this claim, arguing that (a) it had no duty to Mr.

Picariello; and (b) there is no evidence that its actions or inactions caused Mr. Picariello to fall

and sustain injuries.[4]  The Court considers each argument separately.

### 1.    Duty

"Duties can arise from common law, by statute and by contract."  Emerson v. Adult

Cmty. Total Servs., Inc., 842 F. Supp. 152, 155 (E.D. Pa. 1994) (citations omitted).  The

Supreme Court of Pennsylvania has recognized that, in general,

> "a party to a contract does not become liable for a breach thereof to one who is not
> a party thereto.  However, a party to a contract by the very nature of his contractual
> undertaking may place himself in such a position that the law will impose upon him
> a duty to perform his contractual undertaking in such manner that third
> persons—strangers to the contract—will not be injured thereby . . . .  It is not the
> contract per se which creates the duty; it is the law which imposes the duty because
> of the nature of the undertaking in the contract."

Farabaugh v. Pa. Turnpike Comm'n, 911 A.2d 1264, 1283 (Pa. 2006) (quoting Evans v. Otis

Elevator Co., 168 A.2d 573, 575 (Pa. 1961)) (internal citations omitted).  "The question of

whether a duty exists is purely a question of law."  Brown v. Pa. Dep't of Transp., 11 A.3d 1054,

1056-57 (Pa. Commw. Ct. 2011) (citing McCandless v. Edwards, 908 A.2d 900, 904 (Pa. Super.

Ct. 2006)).

Here, Defendant argues that Aker selected and purchased the scaffolding system it wanted

---

[4]  Defendant has not moved for summary judgment on Mrs. Picariello's loss of
consortium claim.

to use, and contracted with Defendant to erect that scaffolding.  (Def.'s Mem. Supp. Mot. Summ.

J. 16.)  Defendant contends that the duty arising from this contract was "to erect and maintain the

scaffold . . . in such a manner as to avoid injury to third parties," and that it fulfilled this duty.

(Id. at 17.)  It further argues that the scaffolding did not come with a swing gate or hatch when it

was purchased, that Aker did not request Defendant to incorporate either of these devices when it

erected the scaffolding, and that neither a gate nor a hatch was required by OSHA.  (Id. at 16.)

Therefore, according to Defendant, it did not have a duty to Mr. Picariello to install a swing gate

or a hatch on the scaffolding from which he fell.  (Id. at 16-18.)

In making its argument, Defendant places significant reliance on Rotshteyn v. Klos

Const., Inc., No. Civ.A.02-6591, 2004 WL 1173128 (E.D. Pa. Apr. 7, 2004).  In that case, the

defendant was hired by Acme Corrugated Box Company ("Acme") to install a "downstacking

machine."  Id. at *1.  After one of Acme's employees died while operating the machine, his

decedents brought a wrongful death action.  Id.  They claimed that the defendant "had a duty to

install electrical sensors or other types of safety devices along with the downstacker components

Acme provided."  Id.  After reviewing the contract between the defendant and Acme, the court

disagreed.  It found that the defendant's

> agreement with Acme requires only that it provide the "knowledge required to
> mechanically install" the downstacking equipment. While it requires [the defendant]
> to provide "all tools, hardware, pieces and equipment needed for installation/project,"
> the agreement does not specifically call upon [the defendant] to provide a safety or
> engineering analysis of the equipment or to install safety equipment in addition to the
> machinery provided by Acme.  Had Acme wanted [the defendant] to provide safety
> analysis or to install additional safety equipment, it could have detailed these
> requirements in its contract.

Id.  In short, the court held that the defendant's "duty was limited to mechanical installation of

the downstacking equipment provided by Acme.  It was not [the defendant's] obligation to

redesign the equipment or to ensure that safety features were incorporated into its design."  Id. at

*2.  Defendant contends that its duty was likewise limited to installing the scaffolding selected by

Acme, not to build or modify the equipment in the manner described by Plaintiffs.

In response, Plaintiffs note that the contract between Defendant and Aker stated that

Defendant would have "complete responsibility for the structural integrity and safety of all of the

scaffolding erected over 2 meters," and was required to "inspect all scaffolding materials and

systems provided by [Aker] for suitability.'"  (Pls.' Resp. Opp'n Mot. Summ. J. 6; id., Ex. B,

Purchase Order between Safway Services, LLC and Aker Philadelphia Shipyard, Aug. 5, 2010

("Purchase Order") 5.)  Plaintiffs argue that Defendant's duty to provide him with proper

scaffolding arises from this contractual language.  (Pls.' Resp. Opp'n Mot. Summ. J. 6.)

After reviewing the agreement between Defendant and Aker—particularly the provisions

cited above by Plaintiff—the Court finds that the precise nature of the contractual duty imposed

on Defendant is ambiguous.  Specifically, it is not entirely clear whether Defendant's obligation

to inspect the scaffolding for "suitability" included the duty to recognize and suggest safer,

alternative designs—such as the inclusion of a swing gate—or whether it merely required

Defendant to ensure that the equipment chosen by Aker was structurally sound.  Neither party has

addressed the meaning of "suitability" as it is used in this context.

The Court also finds, however, that the contract's language *is* clear enough to establish

that Defendant had the duty to ensure the safety of the scaffolding at issue in this case, and that

this duty extended to third parties such as Mr. Picariello.  Therefore, this matter is distinguishable

from Rotshteyn.  In that case, the agreement only required the defendant to "provide the

'knowledge required to mechanically install' the downstacking equipment," and did not mandate "a safety or engineering analysis of the equipment." 2004 WL 1173128, at *1.  Here, on the other hand, Defendant assumed "complete responsibility" for the safety of the scaffolding and agreed to assess its suitability.  In short, the Court finds that Defendant had a duty to ensure that the scaffolding purchased by Aker was safe, but the full extent of that duty cannot be determined based on the evidence submitted.  Accordingly, Defendant's Motion for Summary Judgment, premised on the grounds that it did not have a duty to Mr. Picariello, is denied.

>        **2.     Causation**

In a negligence action, causation is proved by "a demonstration that the breach of duty was both the proximate cause and actual cause of injury . . . ." Eckroth v. Pa. Elec., Inc., 12 A.3d 422, 427 (Pa. Super. Ct. 2010) (citation omitted).  "Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm." Dudley v. USX Corp., 606 A.2d 916, 923 (Pa. Super. 1992) (citation omitted).  "A determination of proximate or legal causation therefore essentially regards 'whether the alleged negligence was so remote that as a matter of law, the defendant cannot be held legally responsible for the subsequent harm.'" Eckroth, 12 A.3d at 428 (quoting Holt v. Navarro, 932 A.2d 915, 921 (Pa. Super. Ct. 2007)).

Here, Defendant argues that Plaintiffs cannot establish that an alleged breach of a duty caused Mr. Picariello's injuries because Mr. Picariello himself could not articulate precisely why he fell from the scaffolding. (Def.'s Mem. Supp. Mot. Summ. J. 18.)  Defendant notes that in his deposition testimony, Mr. Picariello could not recall where he had placed his hands or feet as he climbed over the railing, or explain how he slipped. (Id.)  Without evidence as to why Mr. Picariello fell, Defendant contends, a jury could only speculate as to whether it was negligent.

(Id. at 19.)

In response, Plaintiffs argue that Defendant's characterization of the negligence claim confuses the issue.  According to Plaintiffs, the manner in which Mr. Picariello climbed the guardrail and fell is not pertinent to the question of liability.  (Pls.' Resp. Opp'n Mot. Summ. J. 7.)  Plaintiffs contend that "the issue of fact presently before this Court is whether [Mr. Picariello's] accident would have been avoided if he was able to access the subject scaffolding platform by simply opening a swing gate."  (Id.)  Plaintiffs analogize the cause of Mr. Picariello's accident to being forced to climb over a fence as opposed to walking through it by means of a gate.  (Id.)

The Court finds that Plaintiffs have provided sufficient evidence of causation to withstand the Motion for Summary Judgment.  In doing so, the Court distinguishes this case from two opinions from the Third Circuit Court of Appeals cited by Defendant.  First, in Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69 (3d Cir. 1996), the appellant sued the operator of a cruise ship, alleging that her fall in the ship's bath tub was caused by the absence of additional non-skid stripping on the floor of the tub.  Id. at 72.  In affirming the district court's order granting summary judgment in the appellee's favor, the Third Circuit found that "[n]o evidence presented tends to prove [the plaintiff] was standing either on or off the stripping at the time she fell.  Without such evidence, the jury is left to speculate whether [the defendant's] negligence was the cause in fact of her injury."  Id. at 75.

Next, in Ortzian v. McNeilus Truck & Manufacturing Inc., 354 F. App'x 668 (3d Cir. 2009), the appellant fell from a platform attached to a cement-mixing truck.  Id. at 669. Although he did not recall how or why he fell, he sued the appellee—which designed and

manufactured the platform—claiming that the addition of several safety features would have

prevented his fall.  Id. at 669-70.  The Third Circuit concluded that, based on the evidence on

record, it was possible that the appellant could have fallen even if the proposed safety measures

had been implemented.  Id. at 671-72.  In the absence of any evidence that the appellee's conduct

caused the appellant's fall, the Third Circuit upheld the district court's order granting summary

judgment in the appellee's favor.  Id.

The crucial distinction between Fedorczyk and Ortzian and the present matter is that, in

the former cases, there was no evidence that the proposed design changes would have prevented

the appellants' injuries.  Here, on the other hand, Plaintiffs have introduced at least some

evidence tending to show that Mr. Picariello would not have fallen if he had access to a swing

gate.  During the course of his deposition, Mr. Picariello testified that his fall occurred as he

attempted to climb over the top rail:

> Q.    Was there ever a point where you were physically straddling the top rail?
>       That is, you're basically almost sitting on it with one foot on one side, one
>       foot and the leg, and the other foot and leg on the other side?
> A.    No.  Climbing the ladder my one foot is on top of the rail, holding on to the
>       safety bar that goes up.  And I swing my left foot, and when I was swinging
>       my left foot on top of the rail, I slipped.  That's when I went down and turned
>       my ankle.

(Picariello Dep. 124:7-17.)  Plaintiffs assert that if a swing gate had been provided, Mr. Picariello

never would have had to climb in this manner.  In other words, but for the absence of the swing

gate, Mr. Picariello would not have engaged in the activity that resulted in his fall.  Based upon

this evidence, a jury could potentially find that Defendant's failure to include a swing gate was

the proximate cause of Mr. Picariello's fall.  Accordingly, Defendant's Motion for Summary

Judgment on the issue of causation is denied.

**IV.     CONCLUSION**

For all of the foregoing reasons, the Court finds that the opinions of Plaintiffs' expert, Matthew Burkart, are supported by citations to the factual record of this case and to other credible sources.  It further finds that the contract between Defendant and Aker imposed upon Defendant a duty to ensure the safety and assess the suitability of the scaffolding from which Mr. Picariello fell.  Whether or not this duty required Defendant to recognize the necessity of a swing gate cannot be determined from the evidence presently submitted.  Finally, the Court finds that Plaintiffs have submitted enough evidence to create a question of fact as to whether the failure to install a swing gate was the proximate cause of Mr. Picariello's fall.  Accordingly, Defendant's Motion to Preclude Expert Testimony and Motion for Summary Judgment are denied in their entirety.

An appropriate Order follows.